# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

MICHAEL J. ZUEGE, JR.,

      Plaintiff,

      v.                                          Case No. 08-C-1124

AMY GEFFERS,

      Defendant.

### ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. #30) AND DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DOC. #33)

Now before the court are the parties' cross motions for summary judgment.

## SUMMARY JUDGMENT STANDARD

Under Rule 56(c), summary judgment is proper when the pleadings and other submissions filed in the case show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). After adequate time for discovery, summary judgment is appropriate against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322. A factual dispute between the parties will not defeat a properly supported motion for summary judgment unless the facts in dispute are those which might affect the outcome or resolution of issues before the court. *See, Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**FACTS**

The plaintiff, Michael Zuege, is a state prisoner confined at the Prairie du Chien Correctional Institution (PDCI), a minimum security institution operated by the Wisconsin Department of Corrections (DOC) in Prairie du Chein, Wisconsin.

The Drug Abuse Correctional Center (DACC) is a minimum security institution located in Winnebago, Wisconsin. Defendant Amy Geffers is employed by the DOC as a Social Worker - Corrections C. She is assigned to the Earned Release Program - Fifth Time OWI Program at the DACC and has been employed there since September 15, 2005.

On November 30, 2007, the plaintiff arrived at the DACC. Prior to being enrolled in the Earned Release Program (ERP), the plaintiff applied for and was hired for a job as a tutor. On January 21, 2008, the plaintiff signed an ERP Memo of Agreement at the DACC, thereby accepting the terms and conditions of the ERP. The plaintiff was one of ten offenders assigned to the defendant's group for the ERP program that started January 28, 2008, and ended on July 18, 2008.

Offenders in the ERP must complete a high intensity, evidence-based residential alcohol and drug treatment program. Treatment modules include alcohol/drug education, dependency and addiction, relapse prevention, modification of high risk and thrill seeking behavior, rational behavior training, responsible decision making, and restorative justice concepts. Reintegration planning, and post release supervision by the Division of Community Corrections are program components. The ERP is not a religious based program, however, religious based support groups such as Alcoholics Anonymous and non-secular support groups are offered by DACC.

On May 14, 2008, the plaintiff was terminated from the ERP due to inadequate work performance and failure to meet ERP expectations. He was transferred to another institution to await his classification review. The plaintiff filed Offender Complaint PDCI-2008-21210 on August 1, 2008, asserting that his constitutional rights were violated in April 2008, when the defendant gave him a large book called Ethics of Religion and told him to prepare a report on the book. The complaint was dismissed as untimely and because "Ms. Geffers stated that a [sic] no time during inmate Zuege's program did she force religion on him." (Defendant's Exhibit 1009).

With regard to the incident at the heart of the plaintiff's claim, the parties' stories are contradictory. As the Seventh Circuit noted in *Gonzalez v. City of Elgin*, 578 F.3d 526, 529 (7th Cir. 2009), a person comparing the plaintiff's version of events with that of the defendant "would be forgiven for thinking that each was recalling an entirely different event."

> According to the plaintiff:[1]
>
> On two occasions while the plaintiff was in the program, the defendant, Amy Geffers, confronted the plaintiff in front of his group members as to why the plaintiff did not believe in God or religion. Amy Geffers was the plaintiff's social worker at DACC. Plaintiff explained to the defendant and to his group members that he has never believed in religion, does not celebrate holidays, and does not pray or attend church. The plaintiff told the defendant that he was not in the ERP to discuss his religious beliefs that he was there for AODA. On another occasion, Ms. Geffers told the plaintiff that she wanted him to go and have a talk with another social worker because

---

[1] Although the plaintiff did not submit an affidavit in support of his motion for summary judgment, or in response to the defendant's motion for summary judgment, both his motion for summary judgment and his reply brief are sworn. He cites 28 U.S.C. § 1746 and uses the required "under penalty of perjury" language. The plaintiff's facts are taken from those documents.

> she felt the other social worker could "get through" to the plaintiff about his religious beliefs.
>
> At one point in the program, after defendant Geffers received the plaintiff's victim letter from the plaintiff's girlfriend, Geffers put Zuege on the punishment table, gave him two small books to read and told the plaintiff that the books would help with his relationship problems. When the plaintiff was done reading the two small books he gave the books back to the defendant. Then the defendant brought to Zuege a larger book called "Ethics of Religion". She told the plaintiff to read the book and write a report on what he had learned from the book. The plaintiff told the defendant that he didn't feel like discussing religion anymore and that he felt like his rights were being stepped on. The defendant told the plaintiff that since enrolling in the ERP, that the plaintiff had no rights. The defendant told Zuege that if he didn't finish his assigned punishment work, he would be in more trouble. So the plaintiff wrote the report. After reading the book and doing the report the plaintiff gave the report to the defendant. Geffers wrote on the report in purple magic marker that 'now she sees that the plaintiff likes things in chaos'. The plaintiff had no idea what that meant.

(Plaintiff's Motion for Summary Judgment, pp. 2-3).

The defendant avers that she avoids religion in her group because many of the offenders do not believe in it. She does not recall asking the plaintiff to write a book report as he claims. The defendant looked through her documents regarding the plaintiff and was unable to find this paper. She submits that the plaintiff would not have been asked to write a report involving religion unless he agreed to do so as part of his goals or staffing.

The defendant further states that the plaintiff was not assigned a report to complete as part of a structured intervention technique (SIT) or staffing review. During a group conversation, the plaintiff and another inmate spoke of higher power and religious beliefs. According to the defendant, the plaintiff advised her and the group that he was

4

confused about religion. The defendant responded that this was not an area they would continue to cover during group and suggested that, if the plaintiff wanted to learn more, he should read a book on the topic on his own. However, the plaintiff was not directed or required to complete any individual study or assignments.

The defendant also avers that the book *Ethics of Religion* is not available on the unit library to staff or inmates. A review of the Winnebago Mental Health Library also confirmed that the book is not stocked.

Superintendent Patrick Melman and Supervisor Mary Jo Pleuss reviewed their personal books and could not locate the title. The defendant also looked for the book on the internet to see if she recognized it, but she was not able to find a book with that title. The defendant does not know if the plaintiff was in possession of this book and, if so, where he got it. It is possible the plaintiff obtained or borrowed the book from another offender.

**ANALYSIS**

The plaintiff argues that he is entitled to summary judgment because he was singled out by the defendant because of his non-religious beliefs and forced to write a report on a book entitled *Ethics of Religion*, in violation of his First Amendment rights.

The defendant submits that she is entitled to summary judgment because the plaintiff failed to exhaust his administrative remedies regarding his claim against the defendant. Moreover, the defendant contends that she did not violate the plaintiff's rights under the Establishment Clause of the First Amendment because never directed him to read a book about religion, she is not familiar with the book the plaintiff references, and the book is not available at the DACC.

5

1. **Exhaustion**

Under the Prison Litigation Reform Act (PLRA), "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(e). The PLRA exhaustion requirement requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 126 S.Ct. 2378, 2384, 2387 (2006); *see also Pozo v. McCaughtry*, 286 F.3d 1022, 1023 (7th Cir. 2002) ("To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require"). It is a defendant's burden to establish that a plaintiff has failed to exhaust administrative remedies. *Walker v. Thompson*, 288 F.3d 1005, 1009 (7th Cir. 2002).

The defendant maintains that the Inmate Complaint Review System ("ICRS") was available to the plaintiff as an administrative remedy and that the plaintiff failed to comply with its rules. In support of this claim the defendant points out that the plaintiff submitted an offender complaint months after the incident complained of, instead of within fourteen calendar days of the event giving rise to the complaint, as required by Wis. Admin. Code § DOC 310.09(6).

On the other hand, the plaintiff contends that when an inmate is enrolled in the ERP, the inmate gives up the right to use the complaint procedure afforded to other inmates in the state prison system. In support of his contention, the plaintiff cites his

Earned Release Program Memo of Agreement of July 31, 2007, which was among the defendant's exhibits. The second page, entitled Waiver of Administrative Rules in Earned Release Program, contains a general waiver of all rights under the Department of Corrections' Administrative Rules. It states:

> I understand that chapter DOC 310 of the Wisconsin Administrative Code (Complaint procedures) will not apply to me once I enter ERP. I understand that participants in ERP will be able to file complaints only with ERP. I also understand that such complaints will not be reviewed by the Department of Corrections' Complaint Examiner and Secretary unless ERP recommends that these complaints be so reviewed.

(Defendant's Exhibit 1001, p. 000004).

Although there is a subsequent ERP Memo of Agreement that the plaintiff signed on January 22, 2008, there is no indication that it superseded the previous agreement. While the later memo does not contain the explicit language regarding complaint procedures, it does include the same general waiver of the plaintiff's rights under the Department of Corrections' Administrative Rules that "applies to all of the Department of Corrections' Administrative Rules." (Defendant's Exhibit 1001, p. 000002). All of the ICRS regulations are contained in chapter DOC 310 of the Wisconsin Administrative Code.

Hence, the defendant has not shown that the ICRS applied to the plaintiff while he was in the ERP. Nor has she presented evidence of an alternate complaint system available to the plaintiff in the ERP and, if so, whether he complied with it. *See Walker*, 288 F.3d at 1009.

## 2. First Amendment Claim

The Establishment Clause of the First Amendment guarantees that the "government may not coerce anyone to support or participate in religion or its exercise, or otherwise act in a way which 'establishes a [state] religion or religious faith, or tends to do so.'" *Lee v. Weisman*, 505 U.S. 577, 587 (1992) (quoting *Lynch v. Donnelly*, 465 U.S. 668, 678 (1984)). In *Kerr v. Farrey*, 95 F.3d 472, 479 (7th Cir. 1996), the Seventh Circuit said:

> In our view, when a plaintiff claims that the state is coercing him or her to subscribe to religion generally, or to a particular religion, only three points are crucial: first, has the state acted; second, does the action amount to coercion; and third, is the object of the coercion religious or secular?

In Kerr's case, prison authorities required him, upon pain of being rated a higher security risk and suffering adverse effects for parole eligibility, to attend a substance abuse counseling program with explicit religious content. *Id.*

With regard to the plaintiff's motion for summary judgment, the court must view the facts in the light most favorable to the defendant. Doing that, it must find for the purpose of summary judgment that the defendant never forced the plaintiff to talk about religion, read a book entitled *Ethics of Religion*, or write a report on the book. Similarly, with regard to the defendant's motion for summary judgment, the court must accept as true the plaintiff's version of the facts. Consequently, it must view the facts as showing the plaintiff was required by the defendant to explain his lack of religion and forced by the defendant to read a book about religion and then write a report on it.

In *Gonzalez*, the Seventh Circuit stated:

> The standard of review governing summary judgment, however, resolves at least one question: we must accept all

8

> facts and reasonable inferences in the light most favorable to the non-moving party - here, the plaintiff .... (Citations omitted). We do not judge the credibility of the witnesses, evaluate the weight of the evidence, or determine the truth of the matter. The only question is whether there is a genuine issue of fact.

*Gonzalez*, 578 F.3d at 529. The differences between the plaintiff's and the defendant's versions of the events are not only material, but central, questions of facts that preclude summary judgment for either party. Therefore,

IT IS ORDERED that the plaintiff's motion for summary judgment (Docket #30) is DENIED.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment (Docket #33) is DENIED.

IT IS ALSO ORDERED that a telephonic status conference shall be held at 2:30 PM on November 10, 2010. The court will initiate the call. Plaintiff to provide court with telephone number where he may be reached at the time of the conference.

Dated at Milwaukee, Wisconsin, this 28th day of September, 2010.

BY THE COURT

/s/ C. N. Clevert, Jr.
C. N. CLEVERT, JR.
Chief U.S. District Judge